IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| STAN K. CAHILL, ) | CIVIL ACTION NO. 9:14-2936-BHH-BM |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **REPORT AND RECOMMENDATION** |
| ) | |
| CAROLYN W. COLVIN, ) | |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY ADMINISTRATION, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

The Plaintiff filed the complaint in this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner wherein he was denied disability benefits. This case was referred to the undersigned for a report and recommendation pursuant to Local Rule 73.02(B)(2)(a), (D.S.C.).

Plaintiff applied for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI)[1] on June 24, 2010, alleging that he had been disabled from performing all work activity since May 3, 2007 due to L-5-5 disc degeneration and bulge, 15-S1 disc protrusion, and root compression. (R.pp. 21, 170, 179, 209). Plaintiff's claims were denied initially and upon reconsideration. Plaintiff then requested a hearing before an Administrative Law Judge (ALJ), which



---

[1] Although the definition of disability is the same under both DIB and SSI; Emberlin v. Astrue, No. 06-4136, 2008 WL 565185, at * 1 n. 3 (D.S.D. Feb. 29, 2008); "[a]n applicant who cannot establish that [he] was disabled during the insured period for DIB may still receive SSI benefits if [he] can establish that [he] is disabled and has limited means." Sienkiewicz v. Barnhart, No. 04-1542, 2005 WL 83841, at ** 3 (7th Cir. Jan. 6, 2005). See also Splude v. Apfel, 165 F.3d 85, 87 (1st Cir. 1999)[Discussing the difference between DIB and SSI benefits].

was held on July 25, 2012.  (R.pp. 36-90).  Shortly before the hearing, Plaintiff amended his disability onset date to November 4, 2010.  (R.p. 40, 207).  The ALJ thereafter denied Plaintiff's claim in a decision issued December 6, 2012.  (R.pp. 21-30).  The Appeals Council denied Plaintiff's request for a review of the ALJ's decision, thereby making the determination of the ALJ the final decision of the Commissioner.  (R.pp. 1-6).

Plaintiff then filed this action in United States District Court.  Plaintiff asserts that there is not substantial evidence to support the ALJ's decision, and that the decision should be reversed and remanded for further consideration, or for an outright award of benefits.  The Commissioner contends that the decision to deny benefits is supported by substantial evidence, and that Plaintiff was properly found not to be disabled.

### Scope of review

Under 42 U.S.C. § 405(g), the Court's scope of review is limited to (1) whether the Commissioner's decision is supported by substantial evidence, and (2) whether the ultimate conclusions reached by the Commissioner are legally correct under controlling law.  Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); Richardson v. Califano, 574 F.2d 802, 803 (4th Cir. 1978); Myers v. Califano, 611 F.2d 980, 982-983 (4th Cir. 1980).  If the record contains substantial evidence to support the Commissioner's decision, it is the court's duty to affirm the decision.  Substantial evidence has been defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance.  **If there is evidence to justify refusal to direct a verdict were the case before a jury, then there is "substantial evidence."** [emphasis added].

Hays, 907 F.2d at 1456 (citing Laws v. Celebrezze, 368 F.2d 640 (4th Cir. 1966)).



The Court lacks the authority to substitute its own judgment for that of the Commissioner. <u>Laws</u>, 368 F.2d at 642. "[T]he language of [405(g)] precludes a de novo judicial proceeding and requires that the court uphold the [Commissioner's] decision even should the court disagree with such decision as long as it is supported by substantial evidence." <u>Blalock v. Richardson</u>, 483 F.2d 773, 775 (4th Cir. 1972).

**Discussion**

A review of the record shows that Plaintiff, who was thirty-eight (38) years old on his amended alleged disability onset date, has a high school education with past relevant work experience as a truck customizer, cemetery worker, rental equipment deliverer, construction worker, meat cutter, and retail sales clerk. (R.pp. 29, 84-85, 210). In order to be considered "disabled" within the meaning of the Social Security Act, Plaintiff must show that he has an impairment or combination of impairments which prevent him from engaging in all substantial gainful activity for which he is qualified by his age, education, experience and functional capacity, and which has lasted or could reasonably be expected to last for at least twelve (12) consecutive months. After a review of the evidence and testimony in this case, the ALJ determined that, although Plaintiff does suffer from the "severe" impairment[2] of lumbar degenerative disc disease, he nevertheless retained the residual functional capacity (RFC) to perform a restricted range of light work.[3] The ALJ further determined that Plaintiff's past relevant work as a retail sales clerk did not require the performance

---

[2] An impairment is "severe" if it significantly limits a claimant's physical or mental ability to do basic work activities. <u>See</u> 20 C.F.R. § 404.1521(a); <u>Bowen v. Yuckert</u>, 482 U.S. 137, 140-142 (1987).

[3] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b) (2005).



of work related activities precluded by his RFC, and that he was therefore not entitled to disability benefits. (R.pp. 23-24, 28, 30).

Plaintiff asserts that in reaching this decision, the ALJ erred by failing to give proper weight to the opinion of Plaintiff's treating orthopedist, Dr. Michael Reing. However, after careful review and consideration of the evidence and arguments presented, the undersigned finds and concludes for the reasons set forth hereinbelow that there is substantial evidence in the case record to support the decision of the Commissioner, and that the decision should therefore be affirmed. Laws, 368 F.2d 640 [Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion"].

## I.

### (Medical Records)

Plaintiff's medical records reflect that he was seen at the Powdersville Family Practice on April 30, 2007 complaining of back pain precipitated by heavy weight lifting at work. (R.pp. 288-289). Plaintiff was thereafter seen by several physicians through 2007 and 2008 for this complaint. See generally, (R.pp. 293-294, 297-299, 300, 315-317, 383). An MRI performed on May 4, 2007[4] found that Plaintiff had a left-sided predominate disc budge at L4-5 approximating the left L-5 transverse root origin, a central and right-sided disc protrusion at L5-S1 with mild right S1 root compression, and evidence of disc degeneration at L4-5 and L5-S1. These findings were described as being mild to moderate. (R.p. 293). Plaintiff was evaluated following this MRI by Dr. Michael Bucci, who on August 17, 2007 found on examination that Plaintiff was well developed and in only "mild distress" secondary to back pain. He recommended epidural steroid injections, with surgery

---

[4]The day after Plaintiff's original alleged disability onset date.

4

being a last option if Plaintiff remained symptomatic. (R.p. 300).

Plaintiff thereafter had a consultative examination performed by Dr. Lary Korn on June 17, 2008. Plaintiff told Dr. Korn that he was "better now" but still had difficulties, and that with increased activity the next day he will have a lot of problems with his lower back. However, Plaintiff reported that he rode a Harley, which bothered him less than riding in a motor vehicle, although he reported he was also able to drive. On examination Dr. Korn found Plaintiff to have full pain free range of motion and 5/5 (full) strength in both his upper and lower extremities, with no crepitus, deformity, or edema. Plaintiff was able to heel, toe and tandem walk without difficulty, and Wadell signs[5] were negative. Dr. Korn diagnosed Plaintiff with chronic low back pain with history of prior disc injury at L4-L5 and L5-S1, and opined that it would be "more suitable and safe" for Plaintiff to perform work involving only "medium" duties.[6] (R.pp. 315-317). The following month, state agency physician Dr. Dale Van Slooten reviewed Plaintiff's medical records and completed a Physical Residual Functional Capacity Assessment wherein he opined that Plaintiff had the RFC for medium work with no limitations. (R.pp. 307-314).

On September 9, 2010, Plaintiff had another consultative examination performed, this time by Dr. Stuart Barnes. Plaintiff told Dr. Barnes that he had been suffering back pain since a work related injury in 2007, which had "never really improved", and that he experienced significant back pain and pressure if he sat or stood too long, or walked for greater than thirty minutes.

---

[5]Waddell's signs may indicate non-organic or psychological components to chronic low back pain. Historically they have also been used to detect malingering in patients with back pain. http://en.wikipedia.org/wiki/Waddell's_signs, March 6, 2011.

[6]Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. §§ 404.1567(c), 416.967(c).



However, Plaintiff was noted to be on no prescription medications, and reported that he helped a little bit with cooking and was able to drive, and also did "very light cleaning such as picking up clothes, but nothing heavier . . . .". He also could ride the riding lawnmower. On examination Dr. Barnes noted that Plaintiff had a normal gait and posture and did not need an assistive device to ambulate. Plaintiff had normal range of motion in both upper extremities, with only some "mild crepitus" being noted in the left shoulder. Plaintiff also had normal range of motion in both of his lower extremities with normal strength, and he was able to perform a full squat with full knee flexion. Plaintiff's spine had a normal spinal alignment with normal range of motion, while he had about a forty degree flexion in the lumbar spine before limited by pain, and about a ten degree extension. Waddell's signs were negative "except for distraction". Romberg testing[7] was also normal. Plaintiff was able to heel walk, toe walk, tandem walk, and balance in either leg, all being normal. Dr. Barnes noted the results of Plaintiff's MRI scan, diagnosed him with chronic back pain, and advised another course of muscle relaxers in conjunction with physical therapy, to be re-evaluated for possible surgery if no improvement. (R.pp. 322-324). In conjunction with this evaluation Dr. Barnes completed a range of motion chart, which was all normal except for reduced flexion and extension in the lumbar spine. (R.pp. 326-327).

On September 28, 2010, state agency physician Dr. Charles Lee completed a Physical Residual Functional Capacity Assessment in which he opined that Plaintiff had the RFC for medium work with no manipulative, visual, or communicative limitations. The only environmental limitations Dr. Lee imposed were that Plaintiff should avoid concentrated exposure to vibrations and

---

[7]A Romberg test is an indication of loss of the sense of position in which the patient loses balance when standing erect, feet together, and eyes closed. http://medical-dictionary.thefreedictionary.com/Romberg's+test, 2009.



hazards such as machinery and heights, while posturally he opined that Plaintiff could frequently perform all postural movements except for climbing ladders/ropes/scaffolds, which he should only do occasionally. (R.pp. 328-334).

As previously noted, Plaintiff does not now contend that his back problems were disabling during the period of time represented by the medical records discussed hereinabove. Therefore, in order to obtain disability benefits, Plaintiff must show that his condition substantially worsened after November 4, 2010 (his amended alleged disability onset date) from what it had previously been. Orrick v Sullivan, 966 F.2d 368, 370 (8th Cir. 1992) [absent showing of significant worsening of condition, ability to work with impairment detracts from finding of disability].

On November 4, 2010 (Plaintiff's amended disability onset date), Plaintiff had another lumbar MRI performed which found central/left paracentral herniation of the L4-5 disc, broad based central herniation of the L5-S1 disc, with degenerative change at L4-5 and L5-S1 levels. (R.pp. 339). Plaintiff thereafter returned to see Dr. Bucci on November 23, 2010, where his complaint remained low back pain, the symptoms of which "have been present for approximately three years". It was noted that Plaintiff's complaints had been treated conservatively with over the counter medications. See Robinson v. Sullivan, 956 F.2d 836, 840 (8th Cir. 1992) [Noting that generally conservative treatment not consistent with allegations of disability]. On examination Plaintiff complained of pain "Globally", but he had normal muscle tone and 5/5 (full) muscle strength in "all muscles". He was also found to have normal reflexes, flexion bilaterally, normal coordination, and a normal gait. See generally, Gaskin v. Commissioner of Social Security, 280 Fed.Appx. 472, 477 (6th Cir. 2008)[Finding that evidence of no muscle atrophy and that claimant "possesses normal strength" contradicted Plaintiff's claims of disabling physical impairment].



Plaintiff was assessed with "low back pain - lumbago", lumbar degenerative disc disease, and a ligament strain or sprain, and was advised to "follow up as needed". (R.pp. 366-368). There is nothing in these medical records to indicate any significant change in Plaintiff's condition from what his condition was previously during his period of non-disability. Orrick, 966 F.2d at 370 [absent showing of significant worsening of condition, ability to work with impairment detracts from finding of disability].

Plaintiff was referred by Dr. Bucci to Dr. Michael Grier for an evaluation, and he was seen by Dr. Grier on November 29, 2010. Plaintiff reported an approximately three year history of pain in his low back radiating to the proximal right lower extremity. Plaintiff stated that his pain was worse when he walks which causes him to become stiff in his back and lower extremities "at times". Plaintiff described his pain as constant with exacerbations, although the only medication he was noted to be taking was Tylenol. On examination Plaintiff's cervical, thoracic, and lumbosacral regions were all found to be non-tender. Plaintiff's sacroiliac joints were also non-tender bilaterally. Plaintiff's extremities showed good strength and tone with some proximal give away weakness in the lower extremities, right greater than the left. Deep tendon reflexes were symmetric and non-pathologic throughout, while straight leg raising was positive for back pain bilaterally. Plaintiff had no other focal strength or sensory deficits. (R.pp. 354-355). Plaintiff agreed to begin an epidural steroid injection series, and thereafter received steroid injections from Dr. Grier on December 6 and December 20, 2010.

On January 12, 2011, state agency physician Dr. Freidoon Malek reviewed Plaintiff's medical records and completed a Physical Residual Functional Capacity Assessment in which Dr. Malek opined that Plaintiff had the RFC for light work with the ability to stand and/or walk (with



normal breaks) for a total of about six hours in an eight hour work day, sit (with normal breaks) for a total of about six hours in an eight hour work day, with no manipulative, visual, communicative, or environmental limitations. Posturally, Dr. Malek opined that Plaintiff had an unlimited ability to climb ramps/stairs and balance, and that he could occasionally climb ladders/ropes/scaffolds, stoop, kneel, crouch, and crawl. (R.pp. 111-112). Again, there is no indication in these findings that Plaintiff's condition was of a disabling severity. See also Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986) [Opinion of non-examining physicians can constitute substantial evidence to support the decision of the Commissioner].

Plaintiff continued to be seen by Dr. Grier, to whom Plaintiff reported that the epidural steroid injections were not providing a significant resolution of his symptoms. Plaintiff was noted to have a "slight limp" on the right when he walked and a little bit of "transferred difficulty"; otherwise, objective findings were unchanged. See generally, (R.pp. 346-349).

Plaintiff's first visit to Dr. Reing was on March 25, 2011. Plaintiff told Dr. Reing that "[a]bout a month ago, he started having pain and numbness of his left leg and this has got into a point over the last week where he feels like his leg is going to give out, and indeed it is severely numb". On examination Plaintiff had decreased sensation of the left anterior tibial area, diminished deep tendon reflex, and complained of pain and tenderness in the sciatic notch and in the posterior superior iliac spine. Dr. Reing noted Plaintiff's MRI findings, and opined that Plaintiff's recent problem with his left leg and numbness could be due to his having further ruptured the L4-L5. (R.p. 431). Another MRI was ordered, which was performed on March 29, 2011. This MRI showed a left paracentral disc protrusion at L4-L5 effacing the anterior aspect of the fecal sac without evidence of a neural foraminal compromise, a right paracentral small disc protrusion at L5-S1 effacing the



origin of the right S1 nerve root, with the notation that the L5 nerve roots exit without difficulty. (R.p. 401). Dr. Reing opined that since Plaintiff had been unresponsive to his prior course of treatment, surgical intervention was warranted. (R.pp. 429-430). Dr. Reing thereafter performed surgery on May 2, 2011, following which Plaintiff was discharged with a follow up appointment scheduled for May 20, 2011. See generally, (R.pp. 393-398).

At his follow up on May 20, 2011, Plaintiff still had a marked foot drop and complained of cramps in his calves, but basically felt like he was doing better. Dr. Reing indicated that Plaintiff was going to be placed on a physical therapy program. (R.p. 428). At Plaintiff's next follow up visit on June 14, 2011 his foot drop was noted to be improving. It was also noted that Plaintiff "has got good strength", although Plaintiff stated it was still "not quite enough" for him to ride his motorcycle. Plaintiff also still had some diminished extensor hallucis longus strength, but that was also improving. (R.p. 427).

Plaintiff had another MRI on July 19, 2011, which noted the post surgical changes of L4-L5 and S1 after Plaintiff's fusion and laminectomy. The transpedicular screws demonstrated normal signal, there was no exiting neural compromise seen, the previously noted disc material was not visualized, and there was no recurrent disc seen or infection noted. (R.p. 390-391). At Plaintiff's next follow up with Dr. Reing on August 4, 2011, Dr. Reing noted that Plaintiff's MRI "basically looks quite good", further observing that there was "no disc extrusion, there is no scarring and there is no infection". Plaintiff was injected with an anti-inflammatory at his "trigger point" with "good initial results", and was instructed to return in six weeks. (R.p. 426). On September 1, 2011, Dr. Reing noted that even though Plaintiff's "MRI actually looked good", Plaintiff was still complaining of having significant pain. Dr. Reing recommended that Plaintiff try a Flector patch.



(R.p. 425).

On September 22, 2011, Dr. Reing noted that Plaintiff was "some better with the patches", although Plaintiff complained that his right hip occasionally had severe pain, especially when he squats. Dr. Reing stated that they would "continue our present treatment since the MRI actually looked quite good in terms of the patches and in terms of physical therapy". (R.p. 424). On October 21, 2011, Dr. Reing noted that Plaintiff was "doing better and better all the time", and that Plaintiff was now "really just having localized pain and pain with cold and damp weather". Dr. Reing also noted that Plaintiff was "really not taking any pain medication significantly, so I am pleased with that". (R.p. 423). On December 22, 2011, Plaintiff told Dr. Reing that he was doing "pretty decent", and that he was "getting better and better all the time except with long periods of activity", which would make his back get tight and a little weaker. Dr. Reing discharged Plaintiff to return only on an as needed basis. (R.p. 422).

Plaintiff did not thereafter return to see Dr. Reing until June 28, 2012 (approximately one month before Plaintiff's scheduled hearing before the ALJ), for an evaluation and follow up. Plaintiff complained of back and leg pain, and Dr. Reing ordered another MRI. This MRI showed that Plaintiff had a "stable L4-S1 laminectomy with post surgical changes as described [continued disc degeneration at LR-5 and L5-S1]. No hardware failure or recurrent disc herniation seen". (R.p. 440). Dr. Reing reviewed these results with the Plaintiff on June 28, 2012. (R.pp. 436-437). That same day, Dr. Reing completed a one page form provided by Plaintiff's attorney wherein he was asked to answer four questions. The first question asked whether Plaintiff was capable of working



a full time job at the sedentary[8] work level, to which Dr. Reing circled "no". Dr. Reing further circled that Plaintiff had been so limited since at least November 4, 2010, that Plaintiff would be expected to remain home due to his chronic impairments every day of every month, and wrote that the reason for his opinion was because of "spinal instability and stenosis". (R.p. 435).

On August 7, 2012, Plaintiff had a electrodiagnostic study performed that found no conclusive electrodiagnostic evidence for the presence of lumbar sacral radiculopathy, although there was the presence of neurogenic action potentials in the right tibialis anterior and left vastus medialis. This report indicated that, although not conclusive, this "could" indicate the presence of some nerve root irritation at the right L4-5 and left L3-4 levels. (R.p. 441).

## II.

### (Treating Physician Opinion)

After a review of the medical and subjective evidence in this case, the ALJ found that Plaintiff's lumbar degenerative disease restricted him to the performance of light work with the additional restriction that Plaintiff would need to work at a job that only occasionally required stooping, kneeling, crouching, crawling, or the climbing of ladders, ropes or scaffolds. (R.p. 24). Plaintiff argues that in reaching this conclusion, the ALJ committed reversible error by failing to give proper weight to the opinion of Dr. Reing that Plaintiff is totally disabled. However, while Plaintiff is correct that a treating physician's opinion can be entitled to "great weight", the ALJ gave "little weight" to Dr. Reing's June 2012 questionnaire responses, which indicated that Plaintiff is unable

---

[8]Sedentary work is defined as lifting no more than 10 pounds at a time and occasionally lifting and carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. § 404.1567(a) (2005).

12



to engage in even sedentary work on a sustained basis, citing both to the records from Dr. Reing's own practice, as well as noting that this opinion "contrasts sharply with the other evidence of record". (R.p. 28). This is the proper criteria for an ALJ to use when evaluating a treating physician's opinion, and after careful review of the record and evidence in this case, the undersigned can find no reversible error in the ALJ's treatment of Dr. Reing's June 2012 opinion of disability. Craig v. Chater, 76 F.3d 589-590 (4th Cir. 1996) [rejection of treating physician's opinion of disability justified where the treating physician's opinion was inconsistent with substantial evidence of record]; Krogmeier v. Barnhart, 294 F.3d 1019, 1023 (8th Cir. 2002) ["[W]hen a treating physician's opinions are inconsistent or contrary to the medical evidence as a whole, they are entitled to less weight" (citations omitted) ]; see also Hays, 907 F.2d at 1456 [It is the responsibility of the ALJ to weigh the evidence and resolve conflicts in that evidence].

    First, as correctly noted by the Defendant in her brief, the ALJ was under no obligation to accept Dr. Reing's conclusory statement that Plaintiff is unable to perform full time work at any exertional level (which he did not even put in his own words, but simply circled "no" in response to a question of whether Plaintiff was capable of working a full time sedentary job). Castellano v. Secretary of Health & Human Servs., 26 F.3d 1027, 1029 (10th Cir. 1994) [physician opinion that a claimant is totally disabled "is not dispositive because final responsibility for determining the ultimate issue of disability is reserved to the [Commissioner]"]; 20 C.F.R. § 404.1527(d) ["a statement that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled"].

    Additionally, there is also substantial evidence in the case record to support the ALJ's conclusion that Dr. Reing's own treatment records do not support his opinion of disability from June



2012.  The ALJ specifically referenced that, following the spinal surgery performed by Dr. Reing on May 2, 2011, Plaintiff's MRIs showed the surgery had been successful and his condition continued to improve.  While Plaintiff continued to report that he experienced pain, particularly on exertion (which the ALJ accounted for in his reduced RFC finding), other than recommending that Plaintiff use a Flector patch Dr. Reing himself noted that Plaintiff was not taking any pain medication significantly.  Plaintiff even told Dr. Reing in December 2011 that he was doing "pretty decent" and that his back would get tight and a little weaker "with long periods of activity".  On October 21, 2011, in addition to noting that Plaintiff was "really not taking any pain medication significantly", Dr. Reing further noted that Plaintiff was "really just having localized pain and pain with cold and damp weather", while on June 28, 2012 Dr. Reing recorded that Plaintiff's pain level was only a " 4" on a ten point scale.  Even the MRI ordered by Dr. Reing on June 26, 2012 (the first time Plaintiff had been to see him in six months) shows that he had no hardware failure, no recurrent disc herniation, and that post surgically Plaintiff's L4-S1 laminectomy was "stable", directly contradicting Dr. Reing's finding on the questionnaire that Plaintiff was disabled due to "spinal instability".  (R.pp. 26-27, 390-391, 422-427, 436-437).  These records provide substantial support for the ALJ's conclusion that Dr. Reing's "own reports fail to reveal the type of significant clinical and laboratory abnormalities one would expect if the claimant were in fact disabled . . . .".  (R.p. 28).  Burch v. Apfel, 9 F. App'x 255 (4th Cir. 2001)[ALJ did not err in giving physician's opinion little weight where the physician's opinion was not consistent with her own progress notes.].[9]

       Further, in addition to noting that Dr. Reing's own treatment notes did not support

---

[9] While Plaintiff complains that in giving Dr. Reing's opinion little weight the ALJ failed to consider that Dr. Reing was an orthopedic surgeon, this argument is without merit, as the ALJ clearly identified Dr. Reing as being an orthopedic surgeon when discussing his medical records and findings.  (R.p. 26).



the degree of limitation opined to by Dr. Reing in the June 2012 questionnaire, the ALJ also noted that this opinion "contrast[ed] sharply with the other evidence of record, which renders it less persuasive". (R.p. 28). The ALJ noted that even though Plaintiff testified he had incapacitating pain, including that he could bend very little and could not use his legs to operate foot controls, that he does not use a cane to walk, takes little in the way of pain medications, and that Plaintiff even reported that he had been riding his motorcycle including at one point going into town for thirty minutes and back twice a week for probably two months.[10] (R.pp. 25, 81-83). Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1993) [ALJ may properly consider inconsistencies between a plaintiff's testimony and the other evidence of record in evaluating the credibility of the plaintiff's subjective complaints]. The ALJ further noted that although Plaintiff testified he had stopped riding his motorcycle because he could "hardly walk" after getting off the motorcycle, that Plaintiff's motorcycle had also been repossessed. (R.pp. 25, 81).

    The ALJ also noted the records from Dr. Bucci and Dr. Grier from after November 2010 (when Plaintiff alleges his condition became disabling), together with the results of Plaintiff's post surgical MRIs. Dr. Bucci noted on November 23, 2010 that Plaintiff's complaints were being treated conservatively with over the counter medications, and noted on examination that Plaintiff had normal muscle tone and full muscle strength in "all muscles" with a normal gait. (R.pp. 366-368). When Plaintiff was seen by Dr. Grier on November 29, 2010, he also found that Plaintiff's extremities showed good strength and tone and that Plaintiff's cervical, thoracic, and lumbosacral regions were all non-tender, as were his sacroiliac joints bilaterally. (R.p. 354-355). Richardson v.

---

[10]This evidence directly contradicts the statement by Dr. Reing in the June 2012 questionnaire that Plaintiff's "spinal instability and stenosis" was so severe that he would have to remain home every day of every month due to his chronic impairment. (R.p. 435).

15



Perales, 402 U.S. 389, 408 (1971) [assessments of examining physicians may constitute substantial evidence in support of a finding of non-disability].

The ALJ also noted the findings and conclusions of Dr. Malek, who opined that Plaintiff could perform light work activity with some postural limitations. (R.p. 27). The ALJ concluded that he was fully persuaded by Dr. Malek's opinion, as it was consistent with and supported by the record as a whole, including not just the record prior to Plaintiff's surgery, but also his progress notes post surgery which consistently reported improvement following surgery as well as by the June 2012 MRI which revealed that post surgically Plaintiff's L4-S1 was stable with no hardware failure or recurrent disc herniation. The ALJ specifically incorporated the postural limitations found by Dr. Malek into the RFC in the decision. (R.pp. 24, 27). See (R.pp. 111-112); Smith, 795 F.2d at 345 [Opinion of non-examining physicians can constitute substantial evidence to support the decision of the Commissioner]. While Plaintiff complains that the "ALJ improperly chose to credit the non-examining state agency physicians over Dr. Reing's treating specialist opinions", the ALJ found after "careful consideration" that Dr. Malek's opinion was supported by and was consistent with the objective findings in the record including Dr. Reing's own progress notes, and the undersigned can discern no reversible error in the ALJ's treatment of this evidence. Cf. Ponder v. Colvin, 770 F.3d 1190, 1195 (8th Cir. 2014) [noting that opinions from state agency consultants may be entitled to even greater weight than the opinions of treating or examining sources]; Thomas v. Celebreeze, 331 F.2d 541, 543 (4th Cir. 1964) [court scrutinizes the record as a whole to determine whether the conclusions reached are rational].

Finally, Plaintiff criticizes the ALJ for his statement that the extent of limitation opined to by Dr. Reing in the June 2012 questionnaire may have been simply an effort to satisfy Plaintiff's request. However, that observation is not a basis for reversal of the decision, as it was not



the reason the ALJ discounted his opinion. Rather, as is clearly set forth in the decision as well as herein, supra, the ALJ gave Dr. Reing's June 2012 questionnaire response little weight because the record, including Dr. Reing's own medical records, did not support that opinion. Hence, even assuming the ALJ should not have commented on why Dr. Reing would make the findings he did on the questionnaire when those findings were not supported by his own medical records and conflicted with the other evidence in the record, such a comment was harmless in this case. See Mack v. Colvin, No. 12-3168, 2014 WL 1366030, at * 5 (D.S.C. Mar. 20, 2014) [Finding any error by the ALJ to be harmless and remand to be inappropriate result]; Ward v. Comm'r of Soc. Sec., 211 F.3d 652, 656 (1st Cir. 2000) [Finding no harm from the ALJ's use of an erroneous ground of decision where there was an independent ground on which affirmance should be entered].

After a review of the evidence, the ALJ determined that the restrictions set forth in the RFC in the decision would accommodate Plaintiff's condition consistent with the medical evidence documenting his impairments, while also giving Plaintiff every benefit of the doubt in determining an appropriate RFC. See Welch v. Heckler, 808 F.2d 264, 270 (3d Cir.1986)[findings of moderate pain or discomfort were appropriately accounted for in a reduced RFC finding]; see also Cruse v. Bowen, 867 F.2d 1183, 1186 (8th Cir. 1989)["The mere fact that working may cause pain or discomfort does not mandate a finding of disability]. Again, there is no reversible error shown with respect to these findings, nor does the undersigned find that the ALJ committed any reversible error in his consideration of the opinion of Dr. Reing in conjunction with the medical evidence in the record. Hays, 907 F.2d at 1456 [It is the responsibility of the ALJ to weigh the evidence and resolve conflicts in that evidence]; Thomas, 331 F.2d at 543 [court scrutinizes the record as a whole to determine whether the conclusions reached are rational]; Krogmeier, 294 F.3d at 1023 ["[W]hen a treating physician's opinions are inconsistent or contrary to the medical evidence as a whole, they



are entitled to less weight" (citations omitted) ]; Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986) [The mere presence of impairments does not automatically entitle a claimant to disability benefits, there must be a showing of related functional loss]; Andreolli v. Comm'r of Soc. Sec., 2008 WL 5210682, at *4 (W.D.Pa. Dec. 11, 2008) ["it is well settled that a claimant need not be pain-free or experiencing no discomfort in order to be found not disabled" (citing Welch v. Heckler, 808 F. 2d at 270)].

Therefore, this claim is without merit. Kellough v. Heckler, 785 F.2d 1147, 1149 (4th Cir. 1986) ["If the Secretary's dispositive factual findings are supported by substantial evidence, they must be affirmed, even in cases where contrary findings of an ALJ might also be so supported."] (citation omitted)]; see also Guthrie v. Astrue, No. 10-858, 2011 WL 7583572, at * 3 (S.D.Ohio Nov. 15, 2011), adopted by, 2012 WL 9991555 (S.D.Ohio Mar. 22, 2012)[Even where substantial evidence may exist to support a contrary conclusion, "[s]o long as substantial evidence exists to support the Commissioner's decision . . . this Court must affirm."]; Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996) ["The duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court"]. Poling v. Halter, No. 00-40, 2001 WL 34630642, at * 7 (N.D.W.Va. Mar. 29, 2001) ["It is the duty of the ALJ, rather than the reviewing court, to assess the evidence of record and draw inferences therefrom"], citing Kasey v. Sullivan, 3F.3d 75, 79 (4th Cir. 1993).

### Conclusion

Substantial evidence is defined as " ... evidence which a reasoning mind would accept as sufficient to support a particular conclusion." Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984). As previously noted, if the record contains substantial evidence to support the decision (i.e., if there is sufficient evidence to justify a refusal to direct a verdict were the case before a jury), this Court is required to uphold the decision, even should the Court disagree with the decision. Blalock,



483 F.2d at 775.

Under this standard, the record contains substantial evidence to support the conclusion of the Commissioner that the Plaintiff was not disabled within the meaning of the Social Security Act during the relevant time period. Therefore, it is recommended that the decision of the Commissioner be **affirmed**.

The parties are referred to the notice page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

April 30, 2015
Charleston, South Carolina





**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> Post Office Box 835
> Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).